UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>DERRICK D. COLLIER,<br><br>Debtor. | CASE NO. 18-66097 |
| WILMINGTON SAVINGS FUND SOCIETY, FSB,<br><br>Movant,<br>v.<br><br>DERRICK D. COLLIER, Debtor,<br>NANCY J. WHALEY, Trustee,<br><br>Respondent. | JUDGE: JEFFREY W. CAVENDER<br><br>CHAPTER: 13 |

NOTICE OF HEARING

MOVANT HAS FILED A MOTION TO ANNUL THE AUTOMATIC STAY NUNC PRO TUNC AND DEEM FORECLOSURE SALE VALID IN THIS BANKRUPTCY CASE.

**YOUR RIGHTS MAY BE AFFECTED. You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one. If not served with this notice in accordance with the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, a copy of the motion may be obtained upon written request to counsel for the Movant (identified below) or at the Clerk's office.**

**PLEASE TAKE NOTICE** that the Court will hold a hearing on the Motion on:

**APRIL 9, 2019, AT 10:00 A.M. at the UNITED STATES BANKRUPTCY COURT, RICHARD B. RUSSELL FEDERAL BUILDING, 75 TED TURNER DRIVE, SW, ATLANTA, GA 30303.**

This notice is sent by the undersigned pursuant to 11 U.S.C. Section 362 and Bankruptcy Rule 4001.

Dated: March 15, 2019

*/s/ Radha Gordon*

Radha Gordon, Bar No.: 347192
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: rgordon@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br>DERRICK D. COLLIER,<br><br>Debtor. | CASE NO. 18-66097-JWC<br><br>CHAPTER: 13<br><br>JUDGE: JEFFREY W. CAVENDER |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST,<br><br>Movant,<br>v.<br><br>DERRICK D. COLLIER, Debtor,<br>NANCY J. WHALEY, Trustee,<br><br>Respondents. | CONTESTED MATTER |

**MOTION TO ANNUL THE AUTOMATIC STAY NUNC PRO TUNC AND DEEM FORECLOSURE SALE VALID**

COMES NOW Movant, Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust ("Movant"), and files this Motion to Annul the Automatic Stay Nunc Pro Tunc and Deem Foreclosure Sale Valid. Further, Movant seeks an Order deeming its foreclosure sale valid to the extent it is otherwise valid under Georgia law and the contract between the parties.

## I. STATEMENT OF FACTS

Derrick D. Collier ("Debtor") filed this Chapter 13 petition on September 26, 2018. The Schedules listed the primary residence as 2325 Bigwood Trail, Atlanta, GA 30349, located in Fulton County (the "Property'). The Debtor did not complete the Schedules and did not

further indicate the status of his interest in the property. The case was dismissed on October 17, 2018 for failure to pay the filing fee. On January 31, 2019, the Court reopened the case and the dismissal was vacated. Movant files this Motion seeking to retroactively annul the automatic stay.

**A. LOAN HISTORY**

1. On or about February 29, 2008, Vivian M. Pearson (the "Borrower") executed a Loan Agreement in the principal sum of $95,359.00, payable to Palladium Mortgage Corporation (the "Note"). The Note was endorsed in blank. The Note was formerly secured by a Deed to Secure Debt (the "Security Deed") executed by Vivian M. Pearson. The Security Deed was duly recorded on March 14, 2008 in Deed Book 46466, Page 81 of the Fulton County, Georgia Property Records. A copy of the Note and Security Deed are attached and made a part hereof as Exhibit A**.**

2. A title search conducted in October 2018 did not reveal any recorded transfers to the Debtor. Movant has no information as to the time of manner of any transfer of any interest in the property to the Debtor.

3. Movant conducted a foreclosure sale on October 2, 2018 (the "Foreclosure") and a Third Party was the successful bidder. The Deed under Power was executed on October 2, 2018 (attached hereto as Exhibit B).

**B. PRIOR FORECLOSURE ATTEMPTS**

4. The **first** foreclosure sale was scheduled for April 3, 2018. This foreclosure sale was stopped on April 2, 2018 when Johniyah K. Davis and Johnny K. Davis filed Chapter 13 petitions (case numbers 18-55604 and 18-55602 respectively).

5. A **second** foreclosure sale was scheduled for July 3, 2018. This foreclosure sale was stopped on July 2, 2018 when Derrick Loney filed for bankruptcy protection (case number 18-61030). The deed transferring the property to Derrick Loney was recorded on June 28, 2018.

Movant would later discover that Courtney Felice Haynes also filed a bankruptcy case on June 28, 2018 (case number 18-60741).

6. A **third** foreclosure sale was scheduled for October 2, 2018. Although the Debtor filed this instant case on September 26, 2018, our firm did not receive notice of the filing involving the Property until October 4, 2018. At that time, the Debtor contacted foreclosure counsel and stated that the Property was his residence. A title search conducted prior to the foreclosure sale did not demonstrate that the Debtor had any interest in the property.

**C. PRIOR BANKRUPTCY CASES**

7. On June 8, 2016, the Borrower, Vivian M. Pearson filed a Chapter 13 petition which was assigned case number 16-60145. The confirmed plan surrendered the property to satisfy three lienholders including Rushmore Loan Management Services, the predecessor to Movant. After two years, Ms. Pearson moved *pro se* to voluntarily dismiss her case because she could not continue to make plan payments.

8. On April 2, 2018, a Chapter 13 petition was filed by Johniyah K. Davis and assigned case number 18-55604. Christopher Bennet signed this skeletal petition listing the Property as the primary residence. The filing fee was not paid, the schedules were never completed and the case was ultimately dismissed on April 24, 2018. Courtney Haynes would later inform Movant that Johniyah K. Davis is the daughter of a former employee of hers who was approximately five (5) years old when this case was filed.

9. On April 2, 2018, another Chapter 13 petition was filed on behalf of Johnny K. Davis that indicated the Property was the Debtor's principal residence. Assigned case number 18-55602, the skeletal petition was never supplemented and the case was dismissed on May 2, 2018.

10. On June 28, 2018, Courtney Felice Haynes filed a Chapter 13 petition that was assigned case number 18-60741. The skeletal petition listed the Property as the Debtor's principal residence and was prepared by Christopher Bennett. This case was dismissed on August 3, 2018 for failure to supplement the schedules. Ms. Haynes would later inform Movant that she did not

sign any petition to file bankruptcy. Rather, she had *no* knowledge of the bankruptcy case filing until July 17, 2018 when she obtained a credit report in order to secure financing for a car. After learning of the filing in her name, Ms. Haynes filed a police report in Gwinnett County assigned number 18-065980.

11. On July 2, 2018, Derrick Loney filed a Chapter 13 petition listing the Property as his principal residence. The case was assigned number 18-61030 and was prepared by Nathaniel Washington. The case was dismissed on July 25, 2018 for failure to pay the filing fee. Further, the Schedules were never supplemented.

12. On September 26, 2018, Derrick D. Collier filed a Chapter 13 petition that was assigned case number 18-66097 (the instant case). The skeletal petition indicated the Property as his principal residence and was prepared by Nathaniel Washington. The schedules were never supplemented and the filing fee was not paid. As a result, the case was dismissed on October 17, 2018.

13. On October 2, 2018, Bantevious Brazziel filed a Chapter 13 petition indicating the Property as his primary residence. That case was assigned number 18-66624. The skeletal petition was never supplemented and the case was dismissed on October 23, 2018. On November 5, 2018, Bantevious Brazziel filed another Chapter 13 petition (case number 18-68694). The skeletal petition does not mention the Property.

**14. CURRENT BANKRUPTCY CASE**

Movant advertised the Property for foreclosure pursuant to the power of sale in the Security Deed during the month of September 2018, for a foreclosure sale scheduled for the first Tuesday of October 2018. Debtor filed this petition on September 26, 2018, having not presented a certificate showing completion of the credit counseling course. As such, pursuant to 11 U.S.C. §109(h)(1) and 11 U.S.C. §521(b), the Debtor was not eligible to be a debtor in the presently filed case. Furthermore, because the Debtor was not on any recorded documents at the time of the foreclosure sale, the foreclosure sale went forward and was concluded on October 2, 2018.

Movant seeks an Order retroactively lifting the Automatic Stay as to the Debtor's

possession of the property or annulling the automatic stay nunc pro tunc and validating the foreclosure sale to the extent it is valid under state law and the contractual agreement between the parties.

## II. ARGUMENT

### A. CAUSE EXISTS TO ANNUL THE AUTOMATIC STAY NUNC PRO TUNC.

Pursuant to 11 U.S.C. §362(d)(1), the Court shall, on request of a party in interest, grant relief from the stay provided under 11 U.S.C. §362(a) by terminating, annulling, modifying or conditioning such stay for cause. See 11 U.S.C. §362(d)(1). Even though the Bankruptcy Code does not give specific bases for annulment, the stay may be lifted "for cause" if the petition was filed in bad faith. Indeed, courts in the Eleventh Circuit have annulled the §362(a) stay "for cause" if the bankruptcy petition was filed in bad faith. In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988). Because the Bankruptcy Code does not define "bad faith," the court may consider the following factors:

> (1) The debtor's income;
> (2) the debtor's living expenses, including the expenses of any dependents;
> (3) attorney's fees;
> (4) the expected duration of debtor's plan;
> (5) the debtor's motivations and sincerity in seeking relief under Chapter 13;
> (6) the debtor's degree of effort;
> (7) the debtor's ability to earn and the likelihood of fluctuation in earnings;
> (8) special circumstances (such as inordinate medical expenses);
> (9) the frequency with which the debtor has sought relief under the bankruptcy code;
> (10) the circumstances under which the debtor contracted her debts and her demonstrated bona fides, or lack thereof, in dealings with creditors;
> (11) the trustee's burden in administering the plan;
> (12) the substantiality of the debtor's repayments to unsecured creditors;
> (13) whether a debt would be nondischargeable in a Chapter 7 proceeding; and
> (14) the accuracy of a plan's statement of debts and expenses and whether inaccuracies were an attempt to mislead the court.
>
> In re Kitchens, 702 F.2d 885, 888-89 (11th Cir. 1983).

In the instant petition and other prior petitions, the abundance of the evidence demonstrates that the cases were filed in bad faith. With respect to factors 1, 2, 4, 7, 8, 11, 12,

and 14, the Debtor's failure to file a proposed chapter 13 plan and completed schedules renders an analysis practically impossible. Only one prior debtor, Ms. Pearson, has properly claimed an interest in this property by filing completed schedules, attending a 341 meeting, submitting a proposed plan or otherwise participating in the bankruptcy case after filing the petition. The Debtor's failure to perform the steps required to be eligible under chapter 13 specifically demonstrates a lack of effort with respect to factor 6 to receive a discharge and complete the case.

Factor 5 weighs significantly in favor of this case being filed in bad faith. The Debtor made no effort to complete the Schedules, complete credit counseling or attend the Section 341 meeting of creditors. It does not appear that the Debtor has participated in the case at all beyond filing the petition. This petition was filed on the eve of the scheduled foreclosure sale. There was no subsequent effort towards confirmation after the foreclosure was cancelled. No documents reflecting the Debtor's interest in the property were ever filed. The Schedules did not claim a homestead exemption in the property, or any other personal exemptions. The filing fees were never paid. The Debtor's conduct clearly demonstrates that the motivation in filing the instant petition was to merely hinder, delay, and frustrate Movant's attempts to foreclose on the Property.

Factor 10 weighs even more heavily in favor of a finding of bad faith as Movant is unsure that this debt was contracted by the Debtor. Movant is in possession of several warranty deeds, each of which purport to transfer an interest in the property shortly before a scheduled foreclosure sale. The warranty deed purporting to transfer an interest in the property to Nathaniel Washington and Derrick Collier is not signed by either Grantee. Nathaniel Washington prepared the petition in this case. Furthermore, one debtor and alleged grantor, Courtney Haynes, has stated that she has no interest in the property and did not sign any Deed with respect to the property. Her statement casts significant doubt on the veracity of this deed, its effects, and the Debtor's bona fides.

With respect to factor 3, Movant has and continues to incur costs as a result of repeated

foreclosure attempts. In addition, Movant has incurred legal expense because it has to retain bankruptcy counsel due to multiple bankruptcy petitions. Absent an Order annulling the co-debtor stay and validating the foreclosure sale, Movant will continue to incur more legal expenses as a result of the Debtor's exercise of bad faith.

WHEREFORE, Movant respectfully prays that the Court:

1. Annul the automatic stay nunc pro tunc under 11 U.S.C. §362(a) or, in the alternative, lift the automatic stay for cause with respect to the Debtor's possessory interest in the property;

2. Deem valid the foreclosure sale conducted on October 2, 2018, to the extent it is otherwise valid under Georgia law and the contract between the parties; and

3. Accord Movant any other relief that the Court deems just and proper.

*/s/ Radha Gordon*

Radha Gordon, Bar No.: 347192
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: RGordon@aldridgepite.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on March 15, 2019, I served a copy of Motion to Annul the Automatic Stay Nunc Pro Tunc and Deem Foreclosure Sale Valid which was filed in this bankruptcy matter on March 15, 2019, in the manner indicated:

**The following parties have been served by the Court**:

Julie Anania

**The following parties have been served via U.S. First Class Mail**:

Derrick D. Collier
2325 Bigwood Trail
Atlanta, GA 30349

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

*/s/ Radha Gordon*

Radha Gordon, Bar No.: 347192
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: RGordon@aldridgepite.com

Multistate [redacted]

# NOTE

February 29th, 2008
[Date]

2325 BIGWOOD TRAIL COLLEGE PARK, GA 30349

[Property Address]

1. PARTIES

'Borrower' means each person signing at the end of this Note, and the person's successors and assigns. 'Lender' means PALLADIUM MORTGAGE CORPORATION, A GEORGIA CORPORATION

and its successors and assigns.

2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of NINETY FIVE THOUSAND THREE HUNDRED FIFTY NINE AND NO/100 Dollars (U.S. $ 95,359.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND ONE QUARTER per cent ( 6.250 %) per year until the full amount of principal has been paid.

3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the 'Security Instrument.' That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on April 1st , 2008 . Any principal and interest remaining on the first day of March , 2038 , will be due on that date, which is called the 'Maturity Date.'

(B) Place

Payment shall be made at 3790 DATA DRIVE, SUITE 100, NORCROSS, GA 30092

or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of $ 587.14 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 per cent ( 4.0 %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, 'Secretary' means the Secretary of Housing and Urban Development or his or her designee.



Exhibit A

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Vivian M. Pearson (Seal)
VIVIAN M PEARSON -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

*[Sign Original Only]*

Pay to the order of:
JP MORGAN CHASE BANK, N.A.
Without Recourse
By: PALLADIUM MORTGAGE CORPORATION

SUSAN SHIREY
EXECUTIVE VICE PRESIDENT

Pay to the Order of_______
Without Recourse
JPMorgan Chase Bank, N.A.
By_______
Adel M. McDowall
Authorized Assistant Secretary



Exhibit A

Deed Book 46466 Pg 81
Filed and Recorded Mar-14-2008 12:04pm
2008-0061295
Georgia Intangible Tax Paid $286.50
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Recordation Requested By:
PALLADIUM MORTGAGE CORPORATION
3790 DATA DRIVE
SUITE 100
NORCROSS, GA 30092

Law Office
Gerber & Gerber P.C.
5491-A Roswell Road NE
ATLANTA, GA 30342

When Recorded Mail To:
PALLADIUM MORTGAGE CORPORA[redacted]
3790 DATA DRIVE
SUITE 100
NORCROSS, GA 30092
Send Tax Notices To:
PALLADIUM MORTGAGE CORPORATION
3790 DATA DRIVE
SUITE 100
NORCROSS, GA 30092

[redacted]

[Space Above This Line For Recording Data]

[redacted]

# SECURITY DEED

MIN [redacted]

PARCEL TAX ID#: 13-0133-II-545-8

THIS SECURITY DEED ("Security Instrument") is given on February 29th, 2008 . The grantor is VIVIAN M PEARSON , AN UNMARRIED WOMAN

whose address is 412 HARBOR LINK COURT , FAIRBURN, GA 30213

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, or hereafter defined, and Lenders successors and assigns), as beneficary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. BOX 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

PALLADIUM MORTGAGE CORPORATION, A GEORGIA CORPORATION

which is organized and existing under the laws of THE STATE OF GEORGIA , and whose address is 3790 DATA DRIVE, SUITE 100, NORCROSS, GA 30092 ("Lender"). Borrower owes Lender the principal sum of NINETY FIVE THOUSAND THREE HUNDRED FIFTY NINE AND NO/100 Dollars (U.S. $ 95,359.00 ).

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on March 1st, 2038 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in FULTON County, Georgia:

see attached exhibit "a"

which has the address of 2325 BIGWOOD TRAIL , COLLEGE PARK [Street, City],
Georgia 30349 ("Property Address");
[Zip Code]



Initials: VP

Exhibit A

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds".

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First,</u> to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second,</u> to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third,</u> to interest due under the Note;

<u>Fourth,</u> to amortization of the principal of the Note; and

<u>Fifth,</u> to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the

Deed Book 46466 Pg 82



Exhibit A

monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to the Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Deed Book 46466 Pg 83



Exhibit A

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 30 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 30 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Deed Book 46466 Pg 84



Exhibit A

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

21. Assumption not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

Deed Book 46466 Pg 85



Exhibit A

22. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

- [ ] Condominium Rider
- [ ] Growing Equity Rider
- [ ] Graduated Payment Rider
- [X] Planned Unit Development Rider
- [X] Other(s) [specify] Waiver of Borrower's Rights

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

Unofficial Witness

VIVIAN M PEARSON (Seal) -Borrower

(Seal) -Borrower

Notary Public, County

NICOLE PALACIOS NOTARY PUBLIC FULTON COUNTY, GA

NICOLE PALACIOS
Notary Public, Fulton County, Georgia
My Commission Expires Oct. 17, 2011

(Seal) -Borrower

(Seal) -Borrower

Prepared By:
CASSANDRA TURPIN
PALLADIUM MORTGAGE CORPORATION
3790 DATA DRIVE
SUITE 100
NORCROSS, GA 30092

Deed Book 46466 Pg 86



Exhibit A

# PLANNED UNIT DEVELOPMENT RIDER

[redacted] [redacted]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 29th day of February, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date, given by the undersigned ("Borrower") to secure Borrower's Note ("Note) to PALLADIUM MORTGAGE CORPORATION, A GEORGIA CORPORATION

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
2325 BIGWOOD TRAIL COLLEGE PARK, GA 30349

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as:
THORNWOOD PARK

[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners' Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard.



Exhibit A

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

Vivian M. Pearson (Seal)
VIVIAN M PEARSON -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

*[Sign Original Only]*



Exhibit A

# EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 133 OF THE 13TH DISTRICT, FULTON COUNTY, GEORGIA; BEING LOT 196, THORNWOOD PARK (AKA VILLAGE AT OLD NATIONAL) AS PER PLAT RECORDED IN PLAT BOOK 300, PAGES 36-48, FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS HEREBY INCORPORATED HEREIN BY REFERENCE.

Exhibit A

Deed Book 46466 Pg 90
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

GEORGIA [redacted]

GRANTOR: VIVIAN M. PEARSON

LENDER: PALLADIUM MORTGAGE CORPORATION

DATE OF SECURITY DEED: February 29, 2008

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered in the presence of:

[signature]

[signature]
Notary Public

NICOLE PALACIOS
Notary Public, Fulton County, Georgia
My Commission Expires Oct. 17, 2011

[signature] (SEAL)
VIVIAN M. PEARSON - Grantor

_________________________(SEAL)
- Grantor

_________________________(SEAL)
- Grantor

_________________________(SEAL)
- Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower, I reviewed with and explained to the Borrower the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower of Borrower's rights. After said review with and explanation to Borrower, Borrower executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower, it is my opinion that Borrower knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

[signature]

NICOLE PALACIOS
Notary Public, Fulton County, Georgia
My Commission Expires Oct. 17, 2011

[signature]
Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

[signature]
VIVIAN M. PEARSON

Exhibit A

# PLEASE READ: GEORGIA DOCUMENT EXECUTION INSTRUCTIONS

Please forward executed document(s) to the following address:

Attn: Post Sale
Aldridge Pite, LLP
3575 Piedmont Road NE, Suite 500
Atlanta, GA 30305

DOCUMENT EXECUTION:
Georgia law requires documents that convey interest in real property, including Assignments and Deeds, to be executed by a President, Vice President, Assistant Vice President, Secretary, or Assistant Secretary of the assigning corporation. If one of these specific officers is not executing the document then a Corporate Resolution authorizing the individual to sign will be needed. The Corporate Resolution must be signed by the Secretary.

WITNESS REQUIREMENTS:
As of July 1, 2015, Georgia law requires documents to contain two witness signatures, one of which must be a notary. A notary attestation may be used only if it clearly states that the notary witnessed the making of the signatures (common language of a notary attestation is “sworn and subscribed before me”). Acceptable notary attestations include the California Hancock form, the California 8202 form, and the California Modified 8202 form. A notary acknowledgment is no longer acceptable.
A notary acknowledgment on a document executed prior to July 1, 2015 should be sufficient if given in addition to two witnesses. If used, all signors should date their signatures in order to avoid any question as to whether the document was fully executed prior to July 1, 2015.

DOCUMENT EXECUTION BY ATTORNEY-IN-FACT
If an entity is signing the document as attorney-in-fact on behalf of another entity, a copy of the Power of Attorney is required to be recorded with the assignment unless a Deed Book and Page for an independently recorded Power of Attorney is referenced on the face of the document.

CORRECTIVE DOCUMENT REQUIREMENTS:
If a Corrective Document is needed, both the original recorded document and the Security Deed must be referenced. Corrective language must clearly indicate the error being resolved. Corrective Assignments cannot be used to modify the assignee of a previously recorded assignment unless the error is typographical in nature.

COUNTY REQUIREMENTS:
As of July 1, 2018, Georgia law requires documents recorded in Fulton County to include the parcel identification number to be stated on the top of the first page of any “instrument by which the title to real property or any interest therein is conveyed, created, assigned, encumbered, disposed of, or otherwise affected.” While the parcel identification number may be required for recording, HB 1036 states that the validity and enforceability of an instrument shall not be affected by the presence of an incorrect number or the absence of a number.

Return To:
**Aldridge Pite, LLP**
Fifteen Piedmont Center
3575 Piedmont Road N.E.
Suite 500
Atlanta, GA 30305
(404) 994-7400

NOTE TO CLERK: Cross reference to that Security Deed recorded at Deed Book 46466, Page 81 and modified at Deed Book(s) 54110, Page 253 and 58004, Page 349, Fulton County, GA.

Tax Parcel ID Number: 13 -0133- LL-545-8

STATE OF ________________

COUNTY OF ______________

DEED UNDER POWER

THIS INDENTURE, made effective on **10/2/2018**, by and between **Vivian M. Pearson** (hereinafter collectively "Borrowers"), acting by and through **Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust**, as the duly appointed agent and Attorney-in-Fact (hereinafter "Lender") as Party of the First Part, and **Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust**, as Party of the Second Part:

WITNESSETH:

WHEREAS, Borrower did execute and deliver that certain Security Deed to **Mortgage Electronic Registration Systems, Inc. as nominee for Palladium Mortgage Corporation, A Georgia Corporation**, dated **2/29/2008**, which is recorded in Deed Book **46466**, Page **81** and modified at Deed Book **54110**, Page **253**, and at Deed Book **58004**,Page **349, Fulton** County, Georgia Records, said Security Deed having been last sold, assigned, transferred and conveyed to **Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust** by Assignment, recorded at Deed Book **56308**, Page **448**, **Fulton** County Georgia Records, which conveys the property hereinafter described to secure an indebtedness evidenced by a Note in the original principal amount of $**95,359.00;** and



Exhibit B

WHEREAS, said indebtedness was not paid in accordance with the terms of said Note and Security Deed and became in default, and under the terms thereof the entire principal and interest was declared immediately due and payable; and

WHEREAS, the entire indebtedness remaining in default, and in accordance with the terms of said Security Deed, Lender did advertise said property for sale once a week for four (4) weeks immediately preceding the sale in the newspaper in **Fulton** County, Georgia, wherein the Sheriff carried his advertisements; and

WHEREAS, notice of the foreclosure sale was given in compliance with O.C.G.A. § 44-14-162.2. The required notice was rendered by mailing a copy of the Notice of Sale Under Power that was submitted to the publisher of the newspaper wherein the property was advertised for sale, to the Borrower and any other "Debtor" (as defined by O.C.G.A. § 44-14-162.1) at least thirty (30) days prior to the foreclosure sale date of **10/2/2018**; and

WHEREAS, Lender, according to the terms of said Security Deed, did expose said property for sale to the highest and best bidder for cash on **10/2/2018** within the legal hours of sale before the Courthouse door in **Fulton** County, Georgia and offered said property for sale at public outcry; and

WHEREAS, the property hereinafter described was knocked off to the Party of the Second Part, **Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust** who was the highest and best bidder for cash, at and for the sum of $**90,000.00.**

NOW THEREFORE, in consideration of the premises and the above said sum of $**90,000.00** in hand paid, the receipt of which is hereby acknowledged, the said Party of the First Part does hereby bargain, sell, transfer and convey unto said Party of the Second Part, its successors and assigns, the following described property:

**All that tract or parcel of land lying and being in Land Lot 133 of the 13th District, Fulton County, Georgia, being Lot 196, Thornwood Park (aka Village at Old National) as per plat recorded in Plat Book 300, Pages 36-48, Fulton County, Georgia records, which plat is hereby incorporated herein by reference.**

This conveyance is subject to any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), the right of redemption of any taxing authority, any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, easements, restrictions, covenants, and matters of record superior to the Security Deed first set out above.

TO HAVE AND TO HOLD the said property hereinbefore described, together with all and singular the rights, members and appurtenances thereunto appertaining to the only proper use, benefit and behoof of the said Party of the Second Part, its successors, and assigns, in FEE SIMPLE in as full and ample a manner as the said Party of the First Part or said Party's representatives, heirs, successors and assigns, did hold and enjoy same.

IN WITNESS WHEREOF, Lender as Attorney in Fact for Borrower has caused this instrument to be executed in its corporate name by its duly authorized corporate officers and its corporate seal affixed, and has caused this instrument to be made effective on the date first above written.

**Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust**
By and through their duly appointed attorney-in-fact Rushmore Loan Management Services, LLC by Power of Attorney recorded herewith.

As Attorney in Fact for

**Vivian M. Pearson**

By: ________________________________________

Print Name: _________________________________

Title: _______________________________________

Date: __________

By: ________________________________________

Print Name: _________________________________

Title: _______________________________________

Date: __________

(CORPORATE SEAL)

Signed, sealed and delivered this _____ day of __________, 20__in the presence of:

_________________________________
Witness

_________________________________
Print Witness Name

_________________________________
Witness

_________________________________
Print Witness Name

_________________________________
Notary Public
My Commission Expires:
NOTARY SEAL



Exhibit B

Deed Book 59212 Pg 152
Filed and Recorded Sep-17-2018 02:33pm
2018-0246208
Real Estate Transfer Tax $26.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

**RETURN TO:**
**NATHANIEL WASHINGTON**
**2325 BIGWOOD TRAIL**
**ATLANTA GA 30349**

**Deed Book 46466 Page 81**
**Deed Book 54110/5800 Page 253/349**

Parcel # 13-0133-LL 545-8

# Warranty Deed

**STATE OF GEORGIA**

**COUNTY OF FULTON**

**THIS INDENTURE,** Made the 12ND day of **JUNE 2018** between **VIVIAN PEARSON DERRICK LONEY and COURTNEY FELICE HAYNES** of the County of **FULTON,** and State of Georgia, as party or parties of the first part, hereinafter called **Grantor,** and **NATHANIEL WASHINGTON and DERRICK D. COLLIER** party or parties of the second part, hereinafter called **Grantee** (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

**WITNESSETH** that: Grantor, for and in consideration of the sum of **TWENTY SIX THOUSAND DOLLARS ($26,000.00) AND OTHER VALUABLE CONSIDERATION** in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

**SEE EXHIBIT A**

**WHICH CURRENTLY HAS THE ADDRESS OF 2325 BIGWOOD TRAIL ATLANTA GA 30349**

Exhibit C

**TO HAVE AND TO HOLD** the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only property use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

**AND THE SAID** Grantor will warranty and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

**IN WITNESS WHEREOF**, the Grantor has signed and sealed this deed, the day and year above written.

SIGNED SEALED AND DELIVERED THIS **12TH DAY OF <u>JUNE 2018.</u>**

Vivian M Pearson

**GRANTOR VIVIAN M. PEARSON**

Courtney Felice Haynes

**GRANTOR COURTNEY FELICE HAYNES**

Derrick Loney

**GRANTOR DERRICK LONEY**

Raquel Martin

**WITINESS RAQUEL MARTIN**

Dante Boulder

**WITINESS DANTE BOULDER**

Gladston Ulette

**NOTARY PUBLIC**

GLADSTON ULETTE NOTARY PUBLIC MY COMMISSION EXPIRES JANUARY 22, 2021 ROCKDALE COUNTY, GEORGIA

Exhibit C

Deed Book 59212 Pg 154
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

**EXHIBIT A**

**All that tract or parcel of land lying and being in Land Lot 133 of the 13th District, Fulton County, Georgia, being Lot 196, Thornwood Park (aka Village at Old National) as per plat recorded in Plat Book 300, Pages 36-48, Fulton County, Georgia records, which plat is hereby incorporated herein by reference.**

Exhibit C